UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNLIFT INTERNATIONAL, INC.,<br>Plaintiff,<br>v.<br>ALEJANDRO MAYORKAS, et al.,<br>Defendants. | Case No. 20-cv-08869-JCS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND AFFIRMING DENIAL OF PETITION**<br><br>Re: Dkt. Nos. 17, 18 |

## I. INTRODUCTION

On August 10, 2020, U.S. Citizenship and Immigration Services ("USCIS") denied a Form I-140, Immigrant Petition for Alien Worker ("Petition") filed by Plaintiff Sunlift International, Inc. ("Sunlift") on behalf of Mr. Ping Zhou ("Beneficiary"). Sunlift contends the denial was arbitrary and capricious and contrary to law and brings this action seeking to overturn the denial, while USCIS asks the Court to uphold the denial. Presently before the Court is Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") and Defendants' cross-motion for summary judgment ("Defendants' Motion"). The Court finds that the motions are suitable for determination without oral argument. For the reasons stated below, Plaintiff's Motion is DENIED and Defendants' Motion is GRANTED.[1]

## II. BACKGROUND

### A. Statutory and Regulatory Framework

Under the Immigration and Nationality Act ("INA"), a limited number of employment-based, first preference visas are made available to "certain multinational executives and

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

managers." INA § 203(b)(1)(C), 8 U.S.C. § 1153(b)(1)(C). Such visas are referred to as EB-1C visas. In order to be eligible for an EB-1C visa, an individual must in the three years preceding the application have "been employed for at least 1 year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and . . . seek[ ] to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive." *Id.* The main issue in this case is whether the Beneficiary meets the requirements of this provision based on his employment by Sunlift in a "managerial capacity."

The term "managerial capacity" is statutorily defined as follows:

> (44)(A) The term "managerial capacity" means an assignment within an organization in which the employee primarily—
>
> (i) manages the organization, or a department, subdivision, function, or component of the organization;
>
> (ii) supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
>
> (iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
>
> (iv) exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

INA § 101(a)(44)(A), 8 U.S.C. § 1101(a)(44)(A); *see also* 8 C.F.R. § 204.5(j)(2). A beneficiary who is found to be employed in a managerial capacity under subsection (i) based on management of a "function . . . of the organization[,]" is referred to as a "function manager." In this case, Sunlift contends Mr. Zhou is eligible for an EB-1C visa on the basis that he is a function manager.

In a decision by the Office of Administrative Appeals ("AAO") adopted as USCIS policy guidance, the AAO set forth the following required elements for demonstrating that a beneficiary is a function manager:

> [T]he petitioner must demonstrate that: (1) the function is a clearly

> defined activity; (2) the function is "essential," i.e., core to the organization; (3) the beneficiary will primarily manage, as opposed to perform, the function; (4) the beneficiary will act at a senior level within the organizational hierarchy or with respect to the function managed; and (5) the beneficiary will exercise discretion over the function's day-to-day operations.

*Matter of G- Inc.*, Adopted Decision 2017-05 (AAO Nov. 8, 2017). The policy guidance explains further, "Whether the function is sufficiently related to an organization's core activity or activities is inherently one of degree, and therefore, all relevant facts should be considered in making this determination." *Id.*

A U.S. employer seeking permanent employment for a foreign national under an EB-1C visa must file an I-140 petition. *See* 8 C.F.R. § 204.5(j)(1). The petitioner has the burden to demonstrate eligibility for EB-1C classification by a preponderance of the evidence. INA § 291, 8 U.S.C. § 1361; *Matter of Chawathe*, 25 I. & N. Dec. 369, 375-376 (2010) ("Except where a different standard is specified by law, a petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought."). If the visa petition is approved and the statutory number of such visas for the year have not been used, beneficiaries of the petition can apply to adjust status if they are in the United States or seek an immigrant visa from a U.S. consulate if they are outside the country. *See* INA §§ 221, 245(a), 8 U.S.C. §§ 1201, 1255(a).

### B.     Factual Background and Administrative Proceedings

Sunlift is a California corporation, organized under the laws of the State of California on November 18, 2013. Certified Administrative Record ("CAR"), pp. 435-36.   Sunlift is "engaged in construction and development work in Northern California." CAR, p. 426. It is a wholly-owned subsidiary of a Chinese company, Shenzhen Shenglin Electrical Engineering Co., Ltd. ("Shenzhen Shenglin"). CAR, pp. 389-91, 447-48.  Shenzhen Shenglin is "a business entity primarily engaged in the manufacturing and sales of electrical and mechanical equipment, installation and maintenance of hydroelectric and electrical equipment, and construction of electrical transformation and distribution systems." CAR, p. 421.

Beneficiary Ping Zhou is a citizen of China who began working for Shenzhen Shenglin as its Deputy General Manager in July 2011. CAR, p. 601. In November 2013, Shenzhen Shenglin

decided to transfer Mr. Zhou to the United States to serve as president of Sunlift. CAR, p. 604. Mr. Zhou came to the United States on an L-1A multinational executive or manager nonimmigrant visa with an initial term of one year (February 5, 2014 – February 24, 2015). CAR, p. 432. USCIS subsequently granted extensions through April 2018 and then an additional two-year extension through April 2020. CAR, p. 430; Plaintiff's Motion at 2.

According to Mr. Zhou, Sunlift "began its business operation in stone retail and countertop fabrication." CAR, p. 26. Mr. Zhou, as president of Sunlift, decided in the Fall of 2014 to acquire a company called B&B Marble, Inc. *Id.*; *see also* CAR, pp. 649-683 (documents reflecting acquisition of B&B Marble, executed by Mr. Zhou for Sunlift). According to Mr. Zhou, "as the industry became highly competitive, and Sunlift began to incur a financial loss, he . . . made the strategic decision to re-direct Sunlift's business towards home remodeling projects." CAR, p. 26. In 2016, "Sunlift's remodeling projects continued to increase, and replaced stone fabrication as its main source of business income." *Id.* According to Mr. Zhou, in response to this growth he "created new business units and hired employees with relevant experience to manage those business operations." *Id.* Sunlift continued to move towards "higher valued rebuilding and construction projects" and in 2017 it completed "the first house construction project." *Id.* Mr. Zhou states that he decided to close the showroom and warehouse for the stone fabrication side of the business that year and Sunlift began to turn a profit by the end of the year. *Id.* In 2018, Mr. Zhou "secured several residential home building projects for Sunlift, and the company generated over one million dollars in gross revenue for the first time." *Id.*

On March 30, 2018, USCIS received a Form I-140, Immigrant Petition for Alien Worker, from Sunlift on behalf of Mr. Zhou. CAR, pp. 415-16. In support of the Petition, Sunlift submitted a letter from counsel describing Mr. Zhou's responsibilities and duties as follows:

- Planned, formulated and established company's primary goals, general operating plans and policies (Mr. ZHOU spent 30% of his time on this function);
  - o Developed long-term and short-term goals for marketing, engineering, business development, customer service and all other business matters affecting the company;
  - o Planned, developed and approved specific operational policies,

4

- programs, procedures and methods in concert with general policies;

- o Directed and coordinated operational activities with the help of subordinate managers, exercising the wide latitude of discretionary decision making (Mr. ZHOU spent 30% of his time on this function);

- o Presided over executive meetings and general and special meetings;

- o Implemented general policies established by the company, directing their administration and execution;

- o Monitored the quality of the company's products and services and ensuring maximum user satisfaction;

- o Approved on negotiation and signing major trade and purchasing contracts;

- o Decided on the research findings of the national and international market and identifying business opportunities;

- o Recruited, terminated, evaluated and promoted the managerial personnel based on their job performance, qualification and contribution;

- o Oversaw the company's financing, developing, marketing, producing and other administrative executing issues (Mr. ZHOU spent 20% of his time on this function);

- o Reviewed comprehensive annual business objectives and agendas and overseeing the implementation process;

- o Developed and implemented financial/investment strategy;

- o Managed financial performance and budgets;

- o Ensured all operations and activities are conducted in accordance with the mission and values, sound business practices and policies and practices;

- o Promoted strategic alliance and public relationship. (Mr.

5

ZHOU spent 20% of his time on this function);

- o Maintained and developed the relationship between the company and its members, guests, employees, community, government and industry;

- o Participated in outside activities to enhance the prestige of the company;

- o Broadened the scope of the company's operation by fulfilling the public obligations of the company as a member of the community;

- o Built senior commercial relationships with key commercial contacts and potential partners/sponsors; and

- o Attended major industrial conferences and meetings.

CAR, pp. 424-425. In addition, supporting documentation was attached to the Petition, including: 1) a commercial lease executed by Mr. Zhou, CAR, pp. 617-39; 2) the paperwork regarding the acquisition of B&B Marble, executed by Mr. Zhou, CAR, pp. 649-83; and 3) bids/estimates for four jobs prepared by Mr. Zhou, CAR, pp. 695-720.

On January 1, 2019, USCIS issued a Request For Evidence ("RFE") seeking further supporting documentation regarding a number of the requirements of the visa classification, including evidence that Mr. Zhou would be employed in a "primarily managerial or executive capacity." CAR, pp. 403, 405. The RFE stated that the Petition did "not establish that the beneficiary's position with [Sunlift] [was] in a qualifying executive or managerial role" because the "position description was provided by counsel and not by the petitioner." CAR, p. 405. It stated further:

> the job description provided by counsel of the offered position includes job duties which are given in broad categories and do not provide much insight into the actual job duties performed. More clarity in detail is necessary. It is not clear what the day-to-day tasks will be. For example, counsel states that the beneficiary is tasked with "Setting the subsidiary company's short and long term goals, objectives, policies and business strategies in business development, marketing and fiscal matters" but did not describe how the beneficiary performs this duty. The description of the beneficiary's duties must be more detailed to establish the actual role of the beneficiary with the petitioner. You provided a time estimate for the generalized duties performed by the beneficiary but did not provide an organizational

6

>chart or a brief description of the duties of the beneficiary's direct reports, if any. The evidence does not clearly show how the petitioner's staff functions to relieve the beneficiary from performing non qualifying tasks and is not sufficient to establish that the beneficiary's position is in a qualifying role. Please submit documentary evidence to establish that the beneficiary's position with the petitioner is in a primarily managerial or executive capacity.

CAR, p. 405. Evidence listed in the RFE that might establish that Mr. Zhou's position was "managerial" included "[a]n explanation of the specific daily tasks that are involved with the completion of each of the beneficiary's proposed duties and the percentage of time to be spent on each." CAR, p. 406. The RFE also sought a statement from an authorized Sunlift official "clearly describing [Mr. Zhou's] proposed job duties[,]" and, if applicable, more detailed information showing that Mr. Zhou was a "functional manager." CAR, p. 406.

On March 29, 2019, Sunlift submitted a letter from Mr. Zhou, as Sunlift's president, responding to the RFE ("RFE response letter"). CAR, pp. 101-123. In the section of the letter addressing Mr. Zhou's "managerial position," he provided a list of employees under his supervision and their job duties, both at Sunlift and at Shenzhen Shenglin, to show that his job did not involve "non-qualifying duties," but rather, that those duties were performed by subordinates. CAR, pp. 106-14, 116-21. The letter explained that Sunlift had "an average of 10-12 employees" and that the variation was due to the high turnover in the construction industry. CAR, p. 104.

In the RFE response letter, Mr. Zhou also described his own job duties at both Shenzhen Shenglin and Sunlift. CAR, pp. 114-15, 121-22. He described his job responsibilities at Sunlift as follows:

- Formulate corporate polices and business strategies (Mr. ZHOU spends 20% of his time on this function);

   o Plan, formulate and establish company's primary goals, general operating plans and policies of the overall direction of company;

   o Coordinating with parent company in execution of the subsidiary company's policies and business strategies;

- Manage and direct company's operation (Mr. ZHOU spends 40% his time on this function)

   o Direct and coordinate operational activities at the highest level of management with the help of subordinate managers and executives, including but not limited to signing important

   contracts with major customers, directing market research and analysis, and reviewing and approving major expenses, etc.;

   o Plan and control the company's financial activities, including but not limited to reviewing and analyzing financial reports, overseeing financial policies and procedures, and adjusting financial goals, etc.;

- Take overall responsibility for the human resource functions (Mr. ZHOU spends 30% of his time on this function);

   o Formulate and develop policies and programs in the areas of recruitment, compensation and benefits, training, labor relations and performance management;

   o Manage and coordinate the new hire process for managers and executives;

   o Set up performance review standards, conduct performance assessments on subordinate employees;

   o Direct overall personnel administration on managers of all departments and other staff, regarding their appointments, promotions, transfers, demotions, suspensions, layoffs, and dismissals;

- Promote strategic alliance and public relationship, including maintaining and developing relationships between the company and clients, government agencies, financial agencies, and industry, participating in outside activities on behalf of the company to enhance the prestige of the company, building senior commercial relationship with key commercial contacts and potential partners/sponsors, etc. (Mr. ZHOU spends 10% of his time on this function).

CAR, pp. 114-115. A number of exhibits were attached to the March 29, 2019 RFE response, including Mr. Zhou's resume, CAR pp. 176-78; a "current" organizational chart for Sunlift, CAR, p. 180; a "previous" organizational chart for Sunlift, CAR, pp. 101, 225; additional bids/estimates for two jobs prepared by an employee, CAR, pp. 187-204; and an updated lease, CAR, pp. 233-90.

  On May 14, 2019, the Director of the USCIS's Nebraska Service Center ("Director") denied Plaintiff's Petition. CAR, pp. 85-89. The Director stated that while "[t]he record indicates that it is more likely than not that the beneficiary's previous position abroad was in a qualifying role . . . [it] does not establish that the beneficiary's position with the petitioner is in a qualifying executive or managerial role." CAR, p. 87. The Director pointed to differences between the job description in the original Petition and the one in the later letter from Mr. Zhou in response to the RFE. CAR, p.87. The Director also cited discrepancies in the two organizational charts provided

8

1    in response to the RFE, which the Director found cast doubt on the "reliability and sufficiency of

2    the remaining evidence offered in support of the visa petition." CAR, p. 88. The letter further

3    stated:

> The vague and generalized description of the beneficiary's position is of limited evidentiary value and are not persuasive on the issue of whether the beneficiary is employed in a qualifying role. The list of job duties which are primarily based on broad tasks, which suggest a general sense of the beneficiary's heightened degree of discretionary authority but fail to convey an understanding of what the beneficiary would actually be doing on a daily basis. Other evidence submitted by the petitioner casts further doubt on the nature of the beneficiary's duties. . . . The contradictory structures presented for this organization as well as the overall size of the organization indicates that the beneficiary may be performing non qualifying tasks.

10   CAR, pp. 88-89.

11   On June 14, 2019, Sunlift appealed the denial of the Petition by the Director. CAR, pp. 64-

12   74. On July 25, 2019, Sunlift submitted an appellate brief, a letter by Mr. Zhou in response to the

13   denial ("denial response letter") and additional evidence. CAR, pp. 8-61. In the appellate brief,

14   Sunlift's counsel highlights Mr. Zhou's description in his denial response letter of how he led

15   Sunlift from being "a company that lost money to a profitable one," starting with only one

16   employee in 2014 and growing to a company with "a staff of over a dozen." CAR, pp. 8-9.

17   According to Sunlift, "[i]n the course of these business changes, [Mr. Zhou's] job description also

18   had to be adjusted, which explains why there were modifications to his job description at the time

19   of the RFE response." CAR, p. 9.

20   According to Sunlift, Mr. Zhou's denial response letter also "explains that the

21   Beneficiary's position is that of a senior manager, and specifically, a manager of Sunlift's

22   Business Development function." CAR, p. 9. It states:

> [Mr. Zhou's denial response letter] also explains that the Business Development activities of Sunlift extend across different business units, including sales, marketing, project management, product management, and vendor management. Networking, negotiations, partnerships, and cost-savings efforts are also involved. All of these different departments and activities are driven by and aligned to the business development goals. The Beneficiary has served as the most senior manager of this function.
>
> . . .
>
> Based on Sunlift's description of [Mr. Zhou's] position in [his denial

> response letter], it is 'unquestionable that the Business Development function managed by [Mr. Zhou] is a clearly defined activity, as it involves the development and implementation of growth opportunities within Sunlift, and between Sunlift and external organizations such as its customers. Business Development is often a stand-alone department in many companies, and is the most essential part of any company. It is the function that helps a company to make profit. In Sunlift's case, Business Development is absolutely a core function because its activities brought Sunlift from a business that lost money to a profitable one. Sunlift survived hard times, but now thrives because it went through multiple changes in its business directions, including an acquisition and adaptation of new strategies, all of which resulted from [Mr. Zhou's] decision making in managing this function. As the President of Sunlift, [Mr. Zhou] is also the most senior member of the Business Development function, who exercises discretion over the function's day-to-day operations. He manages the function and relies on his subordinates, *i.e.* his direct reports and indirect reports to perform the function.

CAR, p. 9. The appellate brief goes on to argue that Mr. Zhou satisfies the legal criteria for function managers set forth in an Administrative Appeals Office ("AAO") decision, *Matter of G-Inc.*, Adopted Decision 2017-05 (AAO Nov. 8, 2017). CAR, pp. 9-10. It also explains that there is no "discrepancy" between the two organizational charts provided in response to the RFE because one was described as a "previous" organizational chart and the other was described as a "current" organizational chart. CAR, p. 10.

On August 10, 2020, the AAO denied Plaintiff's appeal based on a *de novo* review of the Director's decision. CAR, pp. 2-7. Because Sunlift did not contend Mr. Zhou qualified for an EB-1C visa based on employment in an executive capacity, the AAO addressed only whether Mr. Zhou would be working in a managerial capacity. CAR, p. 3. It considered evidence regarding Mr. Zhou's job duties along with evidence of the nature of Sunlift's business, its staffing levels, and its organizational structure. *Id.* According to the AAO, Sunlift was required to demonstrate that Mr. Zhou would perform the high-level responsibilities set forth in the statutory definition at INA § 101(a)(44)(A)(i)-(iv), 8 U.S.C. § 1101(a)(44)(A)(i)-(iv), of the INA and that his duties would be primarily managerial. *Id.* The AAO found that Mr. Zhou did not meet this requirement, explaining its conclusion as follows:

> In sum, the duty descriptions submitted for the Beneficiary that do not credibly articulate his daily managerial tasks or establish that he would likely devote a majority of his time to qualifying managerial-level duties. There is insufficient detail and little supporting documentation to corroborate the Beneficiary's performance of

10

> qualifying managerial tasks, including him delegating duties to his claimed subordinates. The Petitioner provides few specific examples and little documentation to substantiate the development activities the Beneficiary monitored, budgets he set, major contracts he negotiated, or "market development decisions" he made. Likewise, the Petitioner did not detail or document the financial policies or procedures the Beneficiary set, strategic planning he oversaw, pay policies he established, strategic alliances or public relationships he promoted, or media issues he managed. In addition, the Petitioner did not specifically articulate or substantiate with supporting documentation the corporate or general operating policies or business strategies the Beneficiary implemented, recruitment policies and programs he ordered, efficiencies in internal business operations he established, or new business lines, sales channels. or products he developed.
>
> The Beneficiary's generic duty descriptions could apply to any manager acting in any business or industry and they provided few credible details specific to the Petitioner's operations. This lack of detail and documentation is particularly noteworthy since the Petitioner asserts that the Beneficiary has been acting in his managerial role in the United States pursuant to an L-1 A nonimmigrant visa for approximately two years and four months since November 2015.

CAR, p. 4.

The AAO also rejected Sunlift's assertion that Mr. Zhou is a "function manager," finding that Sunlift had not: 1) "clearly defined [Mr. Zhou's] asserted function"; 2) demonstrated that the business development function was "essential"; or 3) provided evidence that Mr. Zhou managed the function by delegating non-qualifying tasks to subordinates as opposed to performing the function himself.   CAR, p. 6.  The AAO stated:

> [T]he Beneficiary's claimed "business development" function is explained as being an extensive grouping of generic and seemingly unrelated responsibilities that could apply to any business, including "sales, promotion, marketing, advertising, project management, business planning, and expansion, distribution strategies, product management and product strategies, and public relations." In addition, the Petitioner indicates this function also includes "development of distribution channels, vendor management, strategic initiatives, business strategic partnerships, marketing development, business expansion, brand building, exploring new opportunities in external markets," amongst various other responsibilities. ln other words, the Beneficiary's asserted function is not clearly defined, but is explained as any number of potential responsibilities and functions within the business. Further, as we discussed, the Petitioner provides few examples of the Beneficiary management of his claimed function, such as the marketing, advertising, distribution, product strategies, vendors, or partnerships he oversaw or managed. In addition, the Petitioner submits no supporting documentation to substantiate the Beneficiary's management of a defined essential function within the

11

business.

CAR, p. 6.

With respect to Sunlift's evidence regarding staffing and the "current" organizational chart supplied by Sunlift in response to the RFA, the AAO found that there were discrepancies between the organizational chart – which listed 14 employees, and state tax records for the first quarter of 2018, which listed only six employees.  CAR, p. 5.  The AAO further found that Sunlift "provide[d] no evidence to substantiate the Beneficiary exercising personnel authority over his subordinates or the other members of its organizational chart, nor documentation to establish his delegation of duties to them."  CAR, p. 5.

The AAO also rejected Sunlift's reliance on Mr. Zhou's decisions in 2016 to "replace[ ] stone fabrication as [Sunlift's] main source of business income;" "create[ ] new business units and hire[ ] employees with relevant experience;" and "continue[ ] to move the company's focus towards higher value rebuilding and construction projects;" and his decision in 2017 to "streamline financial efficiency by closing the showroom and warehouse for the stone fabrication side of the busines," finding that "these generic examples provided by [Mr. Zhou] appear to describe him making one time decisions as the owner of a business, but not as a function manager who is daily in charge of a business development function as claimed."  CAR, p. 6.

### C. Contentions of the Parties

In Sunlift's motion, it contends it has met the requirements for demonstrating that Mr. Zhou is a function manager and that both the Director's May 14, 2019 decision and the AAO's August 10, 2020 decision should be reversed on the grounds that they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A).  Plaintiff's Motion at 4. Sunlift "disputes that the evidence submitted in support of its petition seeking to qualify [Mr. Zhou] as a multinational transfer acting in a managerial capacity is deficient[and] maintains that evidence submitted in support of its original petition in February 2018, in its response to USCIS's Request for Evidence submitted in March 2018, and in support of its appeal submitted in July 2019 collectively meet its burden of proof to establish [Mr. Zhou's] eligibility as an employee acting in a managerial capacity."  *Id.*  at

12

6-7. Sunlift notes in passing that while non-binding, the decisions approving his L-1A non immigrant visa petitions, which rely on the same definition of "managerial capacity," support its argument that the denial of the Petition at issue in this case was arbitrary and capricious. *Id.* at 5.

USCIS opposes Sunlift's motion and seeks summary judgment in its favor affirming the denial of the Petition, arguing that substantial and probative evidence supports its conclusion that Sunlift did not meet its burden. Defendants' Motion at 2. USCIS contends the scope of judicial review under the APA is narrow and that a reviewing court is not empowered to substitute its judgment for that of the agency. *Id.* at 5 (*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)). Moreover, it asserts, courts are especially deferential in the context of immigration policy. *Id.* (citing *Jang v. Reno*, 113 F.3d 1074, 1077 (9th Cir. 1997)). So long as the agency's decision is supported by substantial evidence, USCIS contends, it must be upheld. *Id.* at 6. That requirement is met here as to the AAO denial of the Petition, USCIS argues. *Id.* at 7. It rejects Sunlift's argument that the Director's denial is also subject to review, arguing that the APA provides for review only of final agency action. *Id.* (citing *Herrera v. U.S. Citizenship & Immigr. Servs.*, 571 F.3d 881, 885 (9th Cir. 2009)).

USCIS also argues that the Court should not consider the agency's prior approvals of Sunlift's L-1A nonimmigrant visa petitions filed on behalf of Mr. Zhou because "Congress did not intend for USCIS 'to be bound by its initial determination that an employee is a manager for purposes of granting a temporary visa when an application for a permanent visa is filed.'" *Id.* at 12 (quoting *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1476 (5th Cir. 1989)). Further, it asserts, there is no dispute that the USCIS's previous approvals of Plaintiff's L-1A non immigrant petitions are not "service precedent decisions." *Id.* at 12-13 (citing 8 C.F.R. § 103.3(c); *Seven Star, Inc. v. United States*, 873 F.2d 225, 227 (9th Cir. 1989); *Mott Thoroughbred Stables, Inc. v. Rodriguez*, 87 F. Supp. 3d 237, 244 (D.D.C. 2015)). According to USCIS, "[a]s 'many cases where I–140 petitions [seeking EB-1C classification] were denied involved aliens who already enjoyed classification in L nonimmigrant status,' many courts have heard the same argument that Plaintiff references here – and rejected it." *Id.* at 13 (quoting *Q Data Consulting, Inc. v. INS*, 293 F. Supp. 2d 25, 30 (D.D.C. 2003); and citing *Decor Team LLC*, 2021 WL 661974, at *4; *Delta*

13

*Talent, LLC v. Wolf*, 448 F. Supp. 3d 644, 653 (W.D. Tex. 2020); *Mahalaxmi Amba Jewelers v. Johnson*, 652 F. App'x 612, 618 (10th Cir. 2016); *Noble House, Inc. v. Wiles*, No. CV 12-7816-PA-RZx, 2013 WL 1164093, at *7 (C.D. Cal. Mar. 19, 2013); *Nat'l Hand Tool Corp.*, 889 F.2d at 1476)).

In its reply brief, dkt. 19, Sunlift does not challenge USCIS's assertion that the Court's review is limited to the final agency action, that is, the AAO's denial of the Petition and *not* the denial by the Director. Nor does it dispute that the prior approval of an L-1A non immigrant visa for Mr. Zhou has no binding effect or cite any case where a court has pointed to such a decision to show that a subsequent denial of an EB-1C visa was arbitrary and capricious, an abuse of discretion or otherwise contrary to the law under the APA. It reiterates its argument that it has met its burden by showing that the evidence and information supplied in support of the Petition establishes that Mr. Zhou is a function manager under the INA.

### III. ANALYSIS

#### A. Legal Standards Under the APA

The APA provides for judicial review of final agency actions. *See* 5 U.S.C. §§ 702 and 704. Under the APA, a reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The scope of review under this standard is "narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, (1962)). Typically, this requires courts to "'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight System*, 419 U.S. 281, 285 (1974); and citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)).

The Supreme Court has explained that "[n]ormally, an agency rule would be arbitrary and

capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. at 43. "In recognition of the agency's technical expertise the court usually defers to the agency's analysis, particularly within its area of competence." *Arizona Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1163 (9th Cir. 2010); *see also Jang v. Reno*, 113 F.3d 1074, 1077 (9th Cir. 1997) (A court's review is "especially deferential in the context of immigration policy."). Agency action is not entitled to such deference, however, "when the agency's decision is without substantial basis in fact" or there is no "rational connection between the facts found and the determinations made." *Arizona Cattle Growers' Ass'n v. Salazar*, 606 F.3d at 1163 (citing *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 766 (9th Cir. 2007)).

An agency's factual findings are reviewed for substantial evidence. *Family Inc. v. U.S. Citizenship and Immigration Services*, 469 F.3d 1313, 1315 (9th Cir. 2006). "Substantial evidence" is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Even if it is possible to draw two inconsistent conclusions from the evidence contained in the record, this does not render the agency's findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Under this standard, the Court may not reweigh the evidence. *State of Cal., Dep't of Educ. v. Bennett*, 843 F.2d 333, 338 (9th Cir. 1988). Thus, a court must affirm the agency's decision unless the evidence is "so compelling that no reasonable fact finder could fail to find the facts were as [the plaintiff] alleged." *Singh v. Reno*, 113 F.3d 1512, 1514 (9th Cir. 1997).

"In reviewing an administrative agency decision, 'summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did.' " *City & County of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985)). Because a court's review under the APA is limited to the administrative record on which the agency action

15

1  was based, the usual standard for summary judgment under Rule 56 of the Federal Rules of Civil
2  Procedure does not apply. *Occidental Eng'g Co. v. INS*, 753 F.2d at 769-770. Instead, in APA
3  cases, "the function of the district court is to determine whether or not as a matter of law the
4  evidence in the administrative record permitted the agency to make the decision it did." *Id.* at 769.

### B. Application of Legal Standards

As discussed above, to establish eligibility for an EB-1C visa as a "function manager" a petitioner must establish that "(1) the function is a clearly defined activity; (2) the function is 'essential,' i.e., core to the organization; (3) the beneficiary will primarily manage, as opposed to perform, the function; (4) the beneficiary will act at a senior level within the organizational hierarchy or with respect to the function managed; and (5) the beneficiary will exercise discretion over the function's day-to-day operations." *Matter of G- Inc.*, Adopted Decision 2017-05 (AAO Nov. 8, 2017), ECF No. 17-1 at 5. The AAO found that Sunlift had not met its burden, focusing on the first three of these requirements. In particular, it found that Sunlift had not "clearly defined" Mr. Zhou's asserted function, demonstrated that it was an essential function or shown that he primarily managed this function rather than performing it himself. CAR, p. 7. Applying the deferential standards set forth above, the Court finds that the AAO's decision[2] is supported by substantial evidence and is rationally related to its conclusion.

The descriptions of Mr. Zhou's job in the initial Petition, the RFE response and the denial response letter set forth broad categories of duties but provide little detail as to his day-to-day activities to show that he devotes the majority of his time to qualifying managerial activities or delegates non-managerial tasks to subordinates. *See* CAR, pp. 9, 101-123, 424-425. Nor do the documents supplied provide a picture of his day-to-day duties. Sunlift provided a small number of bids/estimates, a lease, and acquisition papers for B&B Marble, but did not provide emails or other documentary evidence reflecting many of the tasks described by Sunlift, including formulating policies, conducting financial analyses and coordinating with Sunlift's parent

---

[2] Because the APA provides for judicial review only of final decisions and Sunlift does not dispute that the decision of the Director is *not* a final decision, the Court reviews only the AAO decision. *See Herrera v. U.S. Citizenship & Immigr. Servs.*, 571 F.3d 881, 885 (9th Cir. 2009) ("Because the AAO's decision was the agency's final decision, we review the AAO's decision.")

16

company. "Specifics are required to establish managerial or executive capacity." *Brar Bros. Farm v. Napolitano*, No. C11-358-RSM, 2012 WL 3887073, at *6 (W.D. Wash. Aug. 8, 2012). Instead, the job duties and function Sunlift claims Mr. Zhou performs are described in largely generic terms and while Sunlift offered a handful of examples showing that Mr. Zhou sometimes engages in managerial activities, this evidence does not compel the conclusion that his duties are *primarily* managerial, as is required. *See Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1071 (9th Cir. 2008) (affirming denial of L1-A classification where "record contain[ed] evidence that [the beneficiary] performed managerial tasks [but did] not compel the conclusion that such tasks comprised his primary responsibilities").

The Court rejects Sunlift's argument that past approval of L1-A visas for Mr. Zhou show that the denial of the EB-1C visa Sunlift now seeks was arbitrary and capricious. Sunlift does not dispute that the prior approvals have no binding effect on USCIS. Further, numerous courts have rejected this argument. *See, e.g.*, *Decor Team LLC v. McAleenan*, No. CV-19-05346-PHX-MTL, 2021 WL 661974, at *3-4 (D. Ariz. Feb. 19, 2021); *Noble House, Inc. v. Wiles*, No. CV 12-7816 PA RZX, 2013 WL 1164093, at *7 (C.D. Cal. Mar. 19, 2013); *Q Data Consulting, Inc. v. I.N.S.*, 293 F. Supp. 2d 25, 30 (D.D.C. 2003). In *Décor Team LLC*, the court reasoned as follows:

> [A]s a general matter, USCIS is not bound by its previous decisions. *See Seven Star, Inc. v. United States*, 873 F.2d 225, 227 (9th Cir. 1989) ("[A] decision by an administrative agency in one case does not mandate the same result in every similar case in succeeding years."). There is an exception for administrative decisions specifically designated as precedential. 8 C.F.R. § 103.3(c). Here, no party asserts that the prior L-1A visa approvals were precedential; as such, these decisions are not binding with respect to the I-140 petition. *Cf. R.L. Inv. Ltd. Partners v. I.N.S.*, 86 F. Supp. 2d 1014, 1024–25 (D. Haw. 2000), aff'd, 273 F.3d 874 (9th Cir. 2001) ("It would be ridiculous to require the INS to grant a petition because it had previously granted a similar petition by mistake. That is precisely why unpublished decisions do not create precedent. The agency recognizes that they may be unimportant for wider purposes or, for that matter, may be questionable."). To "conclude otherwise would impermissibly shift the burden from the petitioner, who bears the burden to establish entitlement to the visa, to USCIS to show that an earlier decision was mistaken." *Healthy & Nat. Trading LLC v. United States Dep't of Homeland Sec.*, No. CV 14-2332 PA, 2014 WL 12564125, at *4 (C.D. Cal. Nov. 12, 2014), aff'd sub nom. 691 F. App'x 437 (9th Cir. 2017).
>
> In addition . . . the L-1A visa and I-140 petitions serve different functions. An "approved L-1A petition allows a foreign citizen to

17

> work, temporarily, for the same company in the United States in a managerial, executive, or specialized position." . . . In contrast, "an approved I-140 petition is part of a three-step process for obtaining an EB-1C visa, which affords lawful permanent residency." . . . Courts have noted this distinction in confirming that USCIS is not bound by its L-1A visa determinations in assessing a subsequent I-140 petition. *See, e.g., Noble House, Inc. v. Wiles*, No. CV 12-7816 PA RZX, 2013 WL 1164093, at *7 (C.D. Cal. Mar. 19, 2013) ("The benefits associated with the granting of an I-140 petition—permanent residence—are sufficiently distinct from the status provided by a L-1A visa—temporary non-immigrant status—that the results of USCIS's analysis of an I-140 petition need not automatically mimic the conclusion USCIS reached when it approved an L-1A visa application[.]"). For these reasons, the Court agrees with Defendants that USCIS's prior approvals of [the beneficiary's] L-1A visas do not, in themselves, render the subsequent denial of the I-140 petition arbitrary or capricious.

2021 WL 661974, at *3-4. The undersigned agrees with the reasoning in *Décor Team LLC* and therefore concludes that past approval of Mr. Zhou's L-1A visas are insufficient to establish that the denial of the Petition was arbitrary and capricious.

In sum, the Court finds that USCIS's denial of the Petition was not arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion is DENIED. Defendants' Motion is GRANTED. The Clerk is instructed to enter judgment in favor of Defendants.

**IT IS SO ORDERED.**

Dated: July 22, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge